## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## at ASHLAND

**Civil Action No. 08-10-HRW**

**TERRY MEYER,**                                                **PLAINTIFF,**

**v.**                **MEMORANDUM OPINION AND ORDER**

**LIFE INSURANCE COMPANY**
**OF NORTH AMERICA,**                               **DEFENDANT.**

This matter is before the Court the parties' cross Motions for Summary Judgment [Docket Nos. 19 and 20]. The motions have been fully briefed by the parties [Docket Nos. 21, 22, 23 and 24] and, for the reasons set forth below, the Court finds that the Defendant Life Insurance Company of America is entitled to judgment as a matter of law.

## I.      BACKGROUND

### A.      The Group Disability Insurance Policy

Defendant Life Insurance Company of North America ("LINA") issued a Group Disability Insurance Contract to State Farm Mutual Automobile Insurance Company ("State Farm"), which became effective for eligible State Farm employees on January 1, 1999.

Pursuant to the policy, an employee is deemed disabled if:

> [he] is unable to perform all the material duties of [his] regular occupation, or solely due to Injury or Sickness, [he] is unable to earn more than 80% of [his] Indexed Covered Earnings; and
>
> after Disability Benefits have been payable for 24 months, [he] is unable to perform all the material duties of any occupation for which [he] may reasonably become qualified based upon education, training or experience, or solely due to Injury or Sickness, [he] is unable to earn more than 80% of [his] Indexed Covered Earnings.

[AR 444][1].

The policy places the burden upon the employee to provide proof of disability:

> Satisfactory proof of Disability [as set forth herein] must be provided to the Insurance Company, at Employee's expense, before benefits will be paid.

[AR 452].

The policy also contains a Work Incentive Benefit proviso which permits employees to return to work while disabled and continue to receive benefits AR 454]. Again, the Insurance Company requires "satisfactory proof of continued Disability" [AR 454].

---

[1] "AR" refers to the Administrative Record, filed under seal, at Docket No. 12.

**B.    Plaintiff's  Claim for Disability**

Plaintiff Terry Meyer began employment with State Farm Mutual State Farm on August 10, 1981.  In 1992, he was made a Claims Supervisor.  In 1994, he was promoted to Claim Team Manager.  He remained in that position until January 8, 2006 [AR 3, 233].

The position of Claim Team Manager is classified as a sedentary occupation [AR 93-94].  In addition to office work, the position requires approximately 10 hours of driving per week.  While in the office, the employee is permitted to sit or stand at his discretion.

While a Claims Supervisor, Plaintiff began suffering from low back pain. In December 1993 he underwent back surgery consisting of a bilateral L4-L5 foraminotomy with laminotomies and partial facetectomy [AR 383].  This procedure was performed by Dr. James Powell.  Plaintiff returned to work following a period of recovery and was subsequently promoted to Claim Team Manager.

The record reveals that, despite the surgery,  Plaintiff continued to experience lower back pain.  In 2000, he was given an adjustable ergonomic work station [AR 120, 249].  Although a June 2001 MRI revealed moderate diffuse disc protrusion at L4-L5 as well as a mildly bulging annulus resulting in mild stenosis,

3

for the next 4 years Plaintiff was treated conservatively and continued to work [AR 283-284].   During this time, he had periods of improvement and exacerbation [AR 368-369].

On September 30, 2005, Plaintiff returned to Dr. Powell for another L4-L5 disectomy [AR 318].  A month after the procedure, Dr. Powell released Plaintiff from his care, finding "notable improvement in sensation and leg pain" [AR 348].

However, the September 2005 procedure did not obviate Plaintiff's problems; he began to experience neck and arm pain, resulting in a loss of strength. Upon Dr. Powell's recommendation, on April 10, 2006, Plaintiff again underwent surgery, this time, on his spine in the cervical area [AR 334-336].

In a May 24, 2006  report  to Plaintiff's internist, Dr. Powell noted that Plaintiff had marked improvement in his arm strength [AR 332].  Indeed, Dr. Powell stated that Plaintiff could "try hitting a golf club as he tolerates at this point."   Dr. Powell further opined that Plaintiff could lift up to twenty pounds. He finally stated that, in his estimation, the fusion would take another four months in which to heal completely [AR 332].

During this time, Plaintiff began treatments with a chiropractor, Terry Meredith.   In his notes, he reports that Plaintiff's recent neck surgery was "beneficial in reducing much of his neck discomfort" and "eliminating" the

4

problems with his arms" [AR 306].   However, on July 7, 2006, he opined that Plaintiff "should not climb, stoop, crawl or lift over 5lbs" [AR 308].

By contrast, two days later, on July 9, 2006, Dr. Powell opined that Plaintiff was "not impaired" in his ability to balance, stoop, kneel, crouch and crawl [AR 411].   Dr. Powell further stated that Plaintiff could lift, push and pull up to twenty pounds bout could not stand or sit for than two hours as he needed to lie down frequently [409-411].

While recovering from his third surgery, Plaintiff applied for long term disability.   In assessing the claim, LINA Case Manager Elena Dominguez consulted LINA's Senior Case Manager Leon Farmer and one of LINA's Medical Directors, Dr. John Mendez.   Specifically, Ms. Dominguez questioned the propriety of approving the claim given that the fusion was not completely healed [AR 681-683].  In addition, in his review of the claim, Dr. Mendez noted the lack of documented limitation which would support the suggested work restrictions [AR 681].    Thus, LINA denied the claim by letter dated July 26, 2006 [AR 318-320].

Plaintiff appealed.   In support of his appeal, Plaintiff submitted several affidavits from co-works who attested to his symptoms and the impact of the same of his ability to work [AR 237-240, 242-243].   However, none of the affidavits

spoke to Plaintiff's condition after the September 2005 disectomy and April 2006 cervical surgery.

In addition, Plaintiff submitted a report from Dr. Joe Woolwine of the Occupational Disability Center.  In his report, dated October 5, 2007, Dr. Woolwine opined that Plaintiff was permanently disabled and that rehabilitation was not likely to be successful [AR 229].   Absent from Dr. Woolwine's report, however, were any tests of Plaintiff's physical capabilities.  It appears that his report was based upon Plaintiff's self-reported symptoms.

In support of his appeal, Plaintiff also obtained a statement from Dr. Powell, dated September 5, 2006.   In this missive to LINA, Dr. Powell concludes that Plaintiff is entitled to "complete and full disability" [AR 249-252].   However, this conclusion is at odds with his own notes of treatment, which reflect improvement in Plaintiff's condition, such as the elimination of leg pain [AR 348].   Moreover, the September 5, 2006 report is not based upon diagnostic or clinical tests.   Nor is the subsequent affidavit of Dr. Powell, dated October 12, 2006, accompanied by records of physical examination or testing [AR 235].

Upon receipt of the foregoing, LINA conducted another review of the claim and approved the payment of long-term disability benefits, effective on December 8, 2006 [AR 200-201].   However, due to the inconsistencies in the record, LINA

elected to have functional capacity examination.   This examination was performed by Michael A.  Lusk of Ashland Physical Therapy.    Based upon his March 8, 2006 examination, he concluded that Plaintiff was able to perform sedentary, light work with no lifting over 10 lbs and the freedom to change positions as frequently as he may need to for comfort [AR 191-198].   Mr. Lusk also expressed concerns as to the "validity" of Plaintiff's symptoms, checking "yes" to the following: unusual/excessive symptoms, unusual/excessive pain behaviors, inconsistent movement patterns and inconsistent strength results [AR 194].

LINA then re-opened the claim and ordered a surveillance of Plaintiff.   The surveillance was conducted over a period of three days in early April 2007.   The written report and DVD contain about an hour of Plaintiff's activities which include Plaintiff rubbing the surface of his outdoor deck with sandpaper while bending over from a seated position and bending down frequently to examine the surface of the deck [AR 161-172].

After reviewing the surveillance file, LINA consulted one of its Nurse Case Managers, Donna Simmons who, in turn, suggested an outside peer review [AR 498-500].  Thus, on June 4, 2007, Dr. Dan Gerstenblitt reviewed the medical record as well as the surveillance information and found that Plaintiff should be able to perform sedentary level work and perhaps even more  [AR 153-160].

7

Indeed, Dr. Gerstenblitt opined that Plaintiff should have been be able to return to his job long ago, even without the aid of his ergonomic work station [AR 155-156].    He questioned the validity of the functional capacity examination, echoing Mr. Lusk's concerns, concluding that the results were not consistent with what Plaintiff should be able to do.    Dr. Gerstenblitt commented '[h]e has worked for years with pain and there is no good explanation as why he could not continue to do so" [AR 156].

Based upon another review of the record, LINA decided to terminate benefits and informed Plaintiff of its decision by telephone as well as by letter dated June 18, 2007 [AR 173-176].

Again, Plaintiff appealed.   In furtherance of the same, Plaintiff submitted a physical capacity evaluation by his then-treating physician, Dr. Robert Thomas [AR 184-187].   In sum, Dr. Thomas opined that Plaintiff's pain constituted a significant handicap and "would eliminate skilled work tasks" [AR 187]. However, there is no indication in his evaluation of any testing done to confirm Plaintiff's subjective complaints.

Dr. Powell, too, added to the record in a letter to Plaintiff's counsel dated July 20, 2007 in which he reiterates his earlier restrictions and concludes that State Farm could not accommodate them [AR 235].

LINA accepted the newly submitted evidence and the file was reviewed by Dr. Robert N. Anfield, who specializes in Occupational Medicine.   Dr. Anfield concluded that, to a reasonable degree of medical certainty, the medical evidence does not demonstrate that Plaintiff is precluded from sedentary to light work activities that are self-paced and do not involve static postures or positions [AR 104-106].  Dr. Anfield further stated that as a Claim Team Manager Plaintiff had the ability to sit and stand as he chose   and take reasonable breaks, he is able to perform the job, including the approximately 10 hours per week of driving required of his position [AR 104-106].

LINA denied Plaintiff's appeal on November 28, 2007.

This lawsuit followed on December 26, 2007 [Docket No. 1].[2]

## II.    STANDARD OF REVIEW

The policy at issue provides: "Satisfactory proof of Disability must be provided to the Insurance Company, at Employee's expense, before benefits will be paid."   The Sixth Circuit Court of Appeals has determined that this language is a sufficient grant of discretion to warrant application of the "arbitrary and capricious" standard of review.  *Yeager v. Reliance Standard Life Insurance*

---

[2]   The Complaint was originally filed in the Greenup Circuit Court, Greenup County, Kentucky and was removed to this Court pursuant to U.S.C. § 1331 and 1441 [Docket No. 1].

*Co.*, 88 F.3d 376 (holding that requirement that claimant submit "satisfactory proof of Total Disability to us" was sufficient grant of discretion to warrant application of "arbitrary and capricious" standard of review to determination of plan administrator).

The arbitrary and capricious standard of review is the least demanding for of judicial review.  When applying arbitrary and capricious standard to denial of ERISA benefits, court must decide whether plan administrator's decision was rational in light of plan's provisions; when it is possible to offer reasoned explanation, based on evidence, for particular outcome, that outcome is not arbitrary or capricious.  *See generally, Smith v. Ameritech*, 129 F.3d 857 (6th Cir. 1997).

In other words, "determining whether the plan administrator's decision was arbitrary and capricious means determining whether it was rational and in good faith, not [whether it was] right."  *Dials v. SMC & Terminal Co.*, 891 F. Supp. 373, 376 (E.D. Ky. 1995), *aff'd* 89 F.3d 833 (6th Cir. 1996).

## III.   ANALYSIS

The issue before this Court is whether LINA acted within its discretion in its determination that, as of June 2007, Plaintiff was capable of returning to his job at State Farm.

10

Plaintiff maintains that the opinions of Dr. Powell and  Dr. Woolwine undermine LINA's decision.   However, as discussed *supra*, the opinions upon which Plaintiff relies are not supported by contemporaneous diagnostic or clinical testing.  Instead, they appear to be based upon Plaintiff's subjective complaints. As such, the Court finds it was reasonable and rational for LINA to discount them.

Plaintff makes much of the surveillance report and DVD.   His arguments would weigh heavier on the Court had LINA relied exclusively upon the surveillance in its decision to terminate benefits.  However, the surveillance was but one of several factors informing LINA's decision.  Further, the activities reported recall and Dr. Gerstenblitt's and Mr. Lusk's concerns or excessive or exaggerated symptoms.

Under the policy, the burden is upon Plaintiff to provide satisfactory proof of disability.  The Court finds that he has not.   Moreover, in light of the lenient standard of review, the Court finds no error in LINA's determination to cease disability benefits.

Notably, LINA does not dispute Plaintiff's lengthy history of back problems. However, the dispositive issue is Plaintiff's condition in June 2007.   The Court finds that ample evidence in the record supports LINA's determination that, as of that date, Plaintiff as able to perform the requirements of Claim Team Manager.

11

**IV.   CONCLUSION**

Based upon the foregoing, the Court finds that LINA's decision to discontinue benefits was neither  arbitrary or capricious but rational in light of the policy's provisions.

Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**.  A judgment in favor of the Defendant will be entered contemporaneously herewith.

This February 5, 2009.

Signed By:

*Henry R Wilhoit Jr.*

**United States District Judge**

12